UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EVANSTON INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>BOSSKI, INC., an Idaho Corporation; and COLUMBIA RIVER MOTO-SPORTS, INC., an Oregon Corporation,<br><br>Defendants. | Case No. 1:14-cv-00227-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |
| BOSSKI, INC., an Idaho Corporation; and<br><br>Counterclaimant,<br><br>vs.<br><br>EVANSTON INSURANCE COMPANY, an Illinois Corporation,<br><br>Counterdefendant. | |

## INTRODUCTION

Pending before the Court in the above-entitled matter are the Defendants' Motion for Partial Judgment on the Pleadings (Dkt. 19) and Plaintiff's Motion for Summary Judgment. (Dkt. 20.) The parties have filed their responsive briefing and the matters are now ripe for the Court's consideration.

**MEMORANDUM DECISION AND ORDER - 1**

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the Motions shall be decided on the record before this Court without oral argument.

## PROCEDURAL HISTORY

On June 6, 2014, Evanston Insurance Company ("Evanston") initiated these proceedings by filing a Complaint and Demand for Jury Trial asserting two claims against the Defendants/Counterclaimants, Bosski, Inc. and Columbia River Moto-Sports, Inc. (Dkt. 1.)[1] Evanston's claims against Bosski included requests for a declaratory judgment and recoupment. As alleged in Evanston's Complaint, Evanston seeks a declaration of the parties' rights and responsibilities with respect to an insurance policy Evanston issued to Defendant/Counterclaimant Bosski, Inc. in relation to a lawsuit filed against Bosski, Inc. in Oregon state court (the "Underlying Action"). Attached to the Complaint are four exhibits: (1) the Summons and Complaint in the Underlying Action (Dkt. 1-1), (2) the insurance policies at issue (Dkt. 1-2), (3) a series of email messages (Dkt. 1-3); and (4) a November 11, 2013 demand letter from an Oregon law firm representing the plaintiff in the Underlying Action, Paul Macy, directed to the Defendants (Dkt. 1-4).

---

[1] On March 31, 2016, a Clerk's Entry of Default was entered against Columbia River Moto-Sports, Inc. (Dkt. 28.)

**MEMORANDUM DECISION AND ORDER - 2**

Evanston seeks a declaration that it has no duty to defend or indemnify Defendant Bosski in the Underlying Action because Bosski failed to comply with the insurance policy's Claims Reporting Provision. (*Complaint*, ¶¶ 29-30, Dkt. 1.) The recoupment claim is for the costs Evanston has covered by providing Bosski with a defense in the Underlying Action. (*Complaint* at ¶¶ 33-34).

On July 30, 2014, Bosski, Inc. filed an Answer, Counterclaim, and Demand for Jury Trial. (Dkt. 6.) Bosski's counterclaim includes two requests for declaratory judgment, an estoppel claim, and a request for attorneys fees pursuant to Idaho Code Sections 41-1839, 12-120, 12-121, and Rule 54 of the Federal Rules of Civil Procedure. (*Answer*, Dkt. 6.) In the first claim for declaratory relief, Bosski seeks a judgment stating that it is entitled to coverage in the Underlying Action including both defense and indemnity costs. (*Answer* at ¶¶ 22-23.) In the second claim for declaratory relief, Bosski seeks a judgment that Evanston's conduct in denying the claims, asserting late notice, asserting a right to recoupment, and proceeding with litigation constitutes insurance bad faith. (*Answer* at ¶¶ 33-36.) Bosski's estoppel claim states that Evanston should be precluded from denying coverage because it took Evanston four months to notify Bosski that Evanston was denying coverage. (*Answer* at ¶¶ 44-47.)

In the instant motions, Bosski seeks partial judgment on the pleadings solely with regard to Evanston's claim for recoupment. (Dkt. 19.) Evanston seeks summary judgment on: (1) its declaratory judgment claim on the basis that there is no insurance coverage

**MEMORANDUM DECISION AND ORDER - 3**

because Bosski failed to comply with a timely notice provision in the insurance policy and (2) Bosski's claim for insurance bad faith on the basis that Evanston provided Bosski with a defense in the Underlying Action even though there is no coverage under the policy. (Dkt. 20.)

For the reasons set forth below, the Court will grant Bosski's motion and deny Evanston's. The Court can determine, as a matter of law, that the recoupment claim is not permitted under Idaho law. However, the coverage issues require interpretation of an ambiguous insurance policy provision, the Claims Reporting Provision, and disputes of fact concerning substantial compliance with that provision that must be reserved for the trier of fact.

## BACKGROUND

Bosski is owned by Ryan Zelinsky and John Boguslawski, exclusively. (*John Boguslawski Declaration* ¶ 2, Dkt. 26-2.) Bosski's primary business is the development and sale of a line of ATV wagons and aluminum ATV/UTV/snowmobile ramps. (*Boguslawski Dec.* at ¶ 1.)

On July 29, 2011, Boguslawski submitted an application for general liability insurance to Bosski's local insurance agent, the Leavitt Group of Boise ("Leavitt Group").[2] (*Boguslawski Dec.* at ¶ 3.) Boguslawski understood that the Leavitt Group approved the

---

[2] The Leavitt Group is not a party to these proceedings. The parties dispute whether the Leavitt Group was acting as Evanston's apparent agent or Bosski's actual agent. Resolution of that dispute is not necessary for the purposes of determining the instant motions.

**MEMORANDUM DECISION AND ORDER - 4**

application. (*Boguslawski Dec.* at ¶ 4.) On September 20, 2011, Boguslawski, on behalf of Bosski, wrote a check to the Leavitt Group in the amount of $4,000 to cover portions of the annual insurance premium for the general liability insurance policy. (*Boguslawski Dec.* at ¶ 4, Ex. 2.)

As a result of these interactions with the Leavitt Group, Bosski obtained General Liability Insurance Policy No. SP-853897 effective from September 2011 to September 20, 2012 (the "2011/2012 Policy"). (*Boguslawski Dec.* at ¶ 5, Ex. 2.) Before the 2011/2012 Policy expired, Bosski renewed its insurance through the Leavitt Group and obtained General Liability Insurance Policy No. 858306 for claims made between September 11, 2012 and September 20, 2013 (the "2012/2013 Policy"). (*Boguslawski Dec.* at ¶ 6, Ex. 4.) In addition, before the 2012/2013 policy had expired, Bosski purchased one-year tail coverage through the Leavitt Group. (*Boguslawski Dec.* at ¶ 7.)

It is undisputed that the 2011/2012 Policy, 2012/2013 Policy and tail coverage were all issued by Plaintiff Evanston. (Dkt. 20-2, ¶ 1.)[3] Nevertheless, all of Bosski's policy premiums were sent to the Leavitt Group in Boise. *Id.* at ¶ 4. In fact, the Leavitt Group of Boise handled all applications, issued the primary policies, issued tail coverage, collected premiums, and otherwise responded to Bosski's coverage questions. (*Boguslawski Dec.* at

---

3  The policies themselves clearly identify Evanston as the insurer but also include a trademark for "Markel." (*Boguslawski Dec.*, Exs. 2, 3.) The parties make no distinction between Markel Corp. and Evanston, which appear to be related entities.

**MEMORANDUM DECISION AND ORDER - 5**

¶ 15.) Boguslawski has submitted a sworn declaration that, based on this contact, he believed the Leavitt Group was Evanston's agent. (*Boguslawski Dec.* at ¶ 15).

On April 5, 2012, Zelinski received a call from Paul Macy. (*Ryan Zelinsky Declaration,* ¶ 3, Dkt. 26-4.) Macy informed Zelinski that he had broken his back while using one of Bosski's ramps. (*Zelinsky Dec.* at ¶ 3.)

Immediately after speaking with Macy, Zelinsky drafted an email to Boguslawski informing him of the interaction. (*Zelinsky Dec.* at ¶ 4.) Also on April 5, 2012 Zelinsky received an email from Macy with pictures of the ramp at issue. (*Zelinsky Dec.* at ¶ 5.)

The next day, Macy called Zelinsky's cell phone 13 times in a 12-minute period. (*Zelinsky Dec.* at ¶ 10.) Zelinsky then called Boguslawski and they decided that Boguslawski would return Macy's call. (*Zelinsky Dec.* at ¶ 7, *Boguslawski Dec.* at ¶ 9.)

After speaking with Macy, both Boguslawski and Zelinsky reached the conclusion that Macy was acting strange and erratic, was not credible, and was trying to perpetuate some kind of scam. (*Zelinsky Dec.* at ¶¶ 3, 6-7; *Boguslawski Dec.* at ¶¶ 9-10). Nonetheless, Bosski, through Boguslawski, contacted the Leavitt Group that same day and notified the Leavitt Group of the contact with Macy. (*Boguslawski Dec.* at ¶ 11). An agent of the Leavitt Group informed Bosski that there was nothing further required unless and until Bosski received a demand letter or something more formal. (*Boguslawski Dec.* at ¶ 11).

In September 2013, Bosski purchased tail coverage from the Leavitt Group for the 2012/2013 policy. (*Zelinsky Dec.* at ¶ 8.) When purchasing tail coverage, Bosski again

**MEMORANDUM DECISION AND ORDER - 6**

mentioned the Macy communications with the Leavitt Group and made certain to purchase tail coverage in the event Macy made a more formal claim. (*Zelinsky Dec.* at ¶¶ 8-9.)

On November 11, 2013, Bosski received a demand letter from Macy's counsel. (*Boguslawski Dec.* at ¶ 13.) Bosski forwarded that letter via email to the Leavitt Group. (*Boguslawski Dec.* at ¶ 15).

Evanston does not dispute that it received notice of the Macy claim on November 14, 2013. "Bosski . . . provided notice of the Macy matter to Evanston by email dated November 14, 2013, when it forwarded the attorney's letter." (Dkt. 20-2, ¶ 14.) Evanston received such notice through the Leavitt Group. (*Boguslawski Dec.* at ¶ 17, Ex. 7.) The email message from the Leavitt Group to Evanston states, "Please see the attached from our insured, we need to open a claim... [sic]." (*Boguslawski Dec.* at Ex. 7.)

On November 26, 2013, a senior claims examiner from the Markel Group, apparently acting on behalf of Evanston, contacted Boguslawski. (*Boguslawski Dec.* at ¶ 17.) This was the first direct contact Bosski had with either the Markel Corp. or Evanston Insurance. (*Boguslawski Dec.* at ¶¶ 16-17.)

On February 28, 2014, Macy filed a lawsuit against Bosski in Oregon state court, thus initiating the Underlying Action. (*Boguslawski Dec.* at ¶ 26, Ex. 14.) Evanston hired and paid for Bosski's defense counsel in the Underlying Action. (*Boguslawski Dec.* at ¶¶ 23-26.)

**MEMORANDUM DECISION AND ORDER - 7**

On March 26, 2014, Evanston sent Bosski a letter stating that it would provide Bosski with a defense in the Underlying Lawsuit but was also taking the position that there was no coverage. (*Complaint*, Ex. F, Dkt. 1-6.) Evanston advised Bosski that it was denying coverage under the 2012/2013 Policy because the claim was not first made during the policy period and under the 2011/2012 Policy based on late notice. *Id.* at p. 5.

## STANDARDS OF REVIEW

### 1.    Motion for Judgment on the Pleadings

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Rule 12(c) challenges the legal sufficiency of the opposing party's pleadings. *See, e.g., Westlands Water Dist. v. Bureau of Rec.*, 805 F.Supp. 1503, 1506 (E.D. Cal. 1992).

A motion for judgment on the pleadings should only be granted if "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law.'" *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment on the pleadings is also proper when there is either a "lack of cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

In reviewing a Rule 12(c) motion, "all factual allegations in the complaint [must be accepted] as true and construe[d] ... in the light most favorable to the non-moving party." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Judgment on the pleadings under Rule 12(c) is warranted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Deveraturda v. Globe Aviation Sec. Servs.*, 454 F.3d 1043, 1046 (9th Cir. 2006) (internal citations omitted).

**2.     Motion for Summary Judgment**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in relevant part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no 'genuine issue of material fact,' since a completely failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.[1]

---

[1] *See also,* Rule 56 (c)(3) which provides, in relevant part:

**MEMORANDUM DECISION AND ORDER - 9**

Moreover, under Rule 56, it is clear that a dispute of fact, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party:

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted).

---

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

**MEMORANDUM DECISION AND ORDER - 10**

Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## ANALYSIS

### 1.     Bosski's Motion for Partial Judgment on the Pleadings

Bosski seeks judgment on the pleadings regarding Evanston's recoupment claim. The legal issue raised is whether an insurer has a right of reimbursement of defense costs assuming *arguendo* that there is no coverage under the policy.

As explained more fully below and consistent with three previous decisions by this Court, the answer is clearly no: an insurer cannot seek reimbursement for the defense costs provided under a reservation of rights unless the insurance policy at issue provides for insurer reimbursement. *See St. Paul Fire & Marine Ins. Co.*, No. CV 07-390-EJL, 2008 WL 3255645 (D. Idaho Aug. 6, 2008); *Blue Cross of Idaho Health Serv., Inc. v. Atlantic Mutual Ins. Co.*, 734 F.Supp.2d 1107 (D. Idaho 2010); *Huntsman Advanced Materials LLC v. OneBeacon Am. Ins. Co.*, No. CV 08-229-BLW, 2012 WL 480011 (D. Idaho Feb. 13, 2012).

Under Idaho law, an insurer's duties to defend and indemnify are separate duties. *See Hoyle v. Utica Mut. Ins. Co.*, 48 P.3d 1256, 1264 (Idaho 2002). The duty to defend is broader than the duty to indemnify. *Id.* Generally, "[t]he duty to defend arises upon a filing of a complaint whose allegations, in whole or in part, read broadly, reveal a potential for

liability that would be covered by the insured's policy." *Id.* at 1260-61. In contrast, the duty to indemnify requires actual coverage under the insured's policy.

Thus, Idaho law contemplates instances in which an insurer's duty to defend is triggered even if it is later determined that coverage does not apply and the insurer has no duty to indemnify the insured. The specific issue raised here is whether the insurer may then recoup the costs spent defending the lawsuit if it is later determined that no coverage applies.

The Idaho federal district court has had opportunity to address this issue no less than three times and, in each instance, has reached the same conclusion: an insurer may only recoup its defense costs if it has included an express provision for reimbursement in the terms of the policy. *See St. Paul Fire & Marine Ins. Co.*, 2008 WL 3255645 at * 6-8; *Blue Cross of Idaho.*, 734 F.Supp.2d at 1113-1114; *Huntsman Advanced Materials LLC*, 2012 WL 480011 at *10-11. This conclusion is based on clear and unequivocal Idaho Supreme Court precedent holding: (1) the terms of an insurance contract dictate the obligations of the parties, *see Hall v. Farmers Alliance Mut. Ins. Co.*, 179 P.3d 276, 280 (Idaho 2008) and (2) a reservation of rights letter can only preserve rights already agreed to by the parties, *see Mutual of Enumclaw v. Harvey*, 772 P.2d 216, 220 (Idaho 1989). Accordingly, Evanston can only seek recoupment of its defense costs if the policy at issue so provides.

**MEMORANDUM DECISION AND ORDER - 12**

In this case, it is undisputed that the policies at issue do not contain a recoupment provision. Accordingly, Evanston's recoupment claim fails as a matter of law even assuming *arguendo* that no coverage exists under the policy.

2.    **Evanston's Motion for Summary Judgment**

Evanston seeks summary judgment on all of Bosski's counterclaims. Evanston argues that no coverage exists under the 2011/2012 Policy based on late notice and under the 2012/2013 Policy because the claim was not made during the policy period. In addition, Evanston asserts that the bad faith claim should be denied because there is no coverage and Evanston, without an obligation to do so, nevertheless provided Bosski with a defense in the Underlying Action.

Bosski argues that it substantially complied with the notice provisions of the policy on April 6, 2012 when it contacted the Leavitt Group of Boise by telephone. Alternatively, Bosski argues that it substantially complied with the notice provisions of the policy on November 14, 2013 when Evanston actually received notice because it had a legitimate excuse for its delay.

Resolution of these issues requires interpretation of the insurance policies specifically including the Claims Reporting Provision. As described more fully below, the Court finds that the Claims Reporting Provision is ambiguous and cannot be applied as a matter of law.

**MEMORANDUM DECISION AND ORDER - 13**

### A.   General Rules for Interpreting Insurance Contracts.

Under Idaho law, interpretation of an insurance policy involves application of "general rules of contract law subject to certain special canons of construction." *Clark v. Prudential Property and Cas. Ins. Co.*, 66 P.3d 242, 244 (Idaho 2003). First, the Court must determine whether there is an ambiguity in the policy. If the policy is clear and unambiguous, then "coverage is determined, as a matter of law, according to the plain meaning of the words used." *Id.* Conversely, if the contract is ambiguous in light of the facts, then the coverage determination is generally reserved for the trier of fact. *Id.*

A contract is ambiguous if it is "reasonably subject to differing interpretations." *Id.* "To determine the meaning of an ambiguous contract, the trier of fact must determine what a reasonable person would have understood the language to mean and the words used must be construed given their ordinary meaning." *Id.*

In interpreting the policies at issue, the Court must also be mindful that insurance policies are contracts of adhesion to be construed against the insurer. "The general rule is that, because insurance policies are contracts of adhesion, typically not subject to negotiation between the parties, ambiguities must be construed strongly against the insurer." *Farmers Ins. Co. v. Talbot*, 987 P.2d 1043, 1050 (Idaho 1999).

### B.  The Policy Provisions at Issue

The 2011/2012 and 2012/2013 Policies are identical with regard to the provisions at issue. There is no dispute that the Claims Reporting Provision is a precedent to coverage.

**MEMORANDUM DECISION AND ORDER - 14**

First, the policies generally provide coverage for bodily injury and property damage liability coverage on a claims-made basis provided that the insured complies with the Claims Reporting Provision:

> **Coverage A.- Bodily Injury and Property Damage Liability:** The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount . . . which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or during the Extended Policy Period, if exercised and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, for Bodily Injury or Property Damage to which this Insurance applies . . . .

(*Complaint*, Ex. B, pp. 14, 48.) Thus, coverage is triggered on the date a "Claim" is "first made against the Insured."

Second, the "Claims Reporting Provision" requires that the insured report any "Claims" to the insured "as soon as practicable:"

> **A. Claims Reporting Provision:** The Insured shall give to the Company written notice as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.
>
> In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

(*Complaint*, Ex. B, pp. 23-24, 57-58.)

Third, the term "Claim" is defined in the policies as:

**MEMORANDUM DECISION AND ORDER - 15**

a notice received by the Insured of an intention to hold the
Insured responsible for: (1) a Bodily Injury; (2) a Property
Damage; (3) an Advertising Injury; or (4) a Personal Injury;
involving this policy and shall include the Service of suit or
institution of arbitration proceedings against the Insured.

(*Complaint*, Ex. B, pp. 15, 49.)

### C. The Claims Reporting Provision Cannot Be Applied as a Matter of Law.

Evanston argues that Bosski does not have insurance coverage under either the
2011/2012 or 2012/2013 Policy because Bosski failed to provide Evanston with written
notice of the claim "as soon as practicable" after Macy first contacted Bosski agents by
telephone on April 5 and 6, 2012. Evanston further argues that providing oral notice to the
Leavitt Group was insufficient under the plain language of the Claims Reporting Provision
and there is no reasonable excuse for Bosski's failure to provide the written notice required.

The Court finds there are two fundamental disputes of fact that preclude the court
from determining, as a matter of law, that Bosski failed to provide timely notice and such
failure is a valid basis for denying coverage: (1) the policy is ambiguous as to what
constitutes a "Claim" under the facts of this case and (2) there is a genuine dispute of
material fact regarding Bosski's substantial compliance with the Claims Reporting
Provision.

### (1) *The Term "Claim" is Ambiguous under the Facts of This Case.*

As a preliminary matter, this Court cannot determine, as a matter of law, that Macy
had made a "Claim" triggering the Claims Reporting Provision before November 11, 2013

**MEMORANDUM DECISION AND ORDER - 16**

when Bosski received the demand letter from Macy's counsel. As described below, the policy language is ambiguous and a reasonable person could conclude that Macy did not demonstrate the requisite intent to hold Bosski responsible for his injuries until he hired a lawyer and sent a demand letter.

The actual language of the policy states that a "Claim" means notice "of an intention to hold the Insured responsible for: (1) a Bodily Injury; (2) a Property Damage; (3) an Advertising Injury; or (4) a Personal Injury; involving this policy and shall include the Service of suit or institution of arbitration proceedings against the Insured." (*Complaint*, Ex. B, pp. 15, 49.)

Evanston argues that Bosski received notice of a "Claim," thus triggering the Claims Reporting Provision, in April 2012 when Macy first telephoned Bosski demanding a monetary settlement for his injuries. Bosski argues that it did not received notice of a "Claim" until November 2013 when it received the demand letter from counsel.

While the definition of a "Claim" is not limited to "service of a suit" or "institution of arbitration proceedings," a reasonable person could conclude from these examples that a Claim requires something "more formal" than the harassing phone calls and vague communications Macy made to Bosski between April 5 and 6, 2012. At that time, Macy had just been injured, did not have legal representations, and his conduct led Bosski's owners to conclude that he was behaving erratically. Given these facts and drawing every reasonable inference in Bosski's favor, a reasonable person could conclude that such

**MEMORANDUM DECISION AND ORDER - 17**

contacts did not constitute an "intention to hold the Insured responsible," such as service of a suit, institution of arbitration proceedings, or even a demand letter from counsel. In fact, this is exactly the conclusion Bosski and the Leavitt Group drew from these facts.

Furthermore, if a jury were to conclude that a "Claim" did not arise until November 11, 2013 when Bosski received Macy's demand letter, then it is undisputed that the Claims Reporting Provision was satisfied. Evanston concedes that it received notice of the Claim on November 14, 2013, just three days after the initial demand letter was received. There is no reasonable argument that this three-day lag does not meet the Claims Reporting Provision requirement that notice be provided "as soon as practicable."

Because the term "Claim" is subject to two reasonable interpretations, the Claims Reporting Provision is ambiguous. Resolving this issue is reserved for the trier of fact who must determine whether a "Claim" arose in April 2012 as opposed to November 2013, thus triggering the Claims Reporting Provision of the policies at issue.

### (2) *There is Also a Dispute of Fact as to Substantial Compliance Assuming the Claims Reporting Provision Was Triggered in April 2012.*

Assuming *arguendo* that the Claims Reporting Provision was triggered on April 2012, there is also a dispute of fact as to whether Bosski substantially complied with the policy by providing oral notice to the Leavitt Group on April 6, 2012 and actual notice to Evanston in November 2013. This dispute of fact also precludes summary judgment as a matter of law.

**MEMORANDUM DECISION AND ORDER - 18**

"[P]rovisions for notice and cooperation in a liability insurance policy are valid, reasonable requirements designed to afford the insurer an opportunity to defend, and to protect it against possible collusion between the assured and persons claiming covered damages." *Leach v. Farmer's Auto. Interinsurance Exchange*, 213 P.2d 920, 923 (Idaho 1950). "[I]n the absence of waiver or estoppel, a <u>substantial</u> <u>breach</u> of such conditions, resulting in prejudice to the insurer, will relieve it of responsibility both to the insured and injured third parties." *Id.* (emphasis added).

Idaho courts make a distinction between substantial compliance and a complete failure to comply with a notice of suit condition. *See Viani v. Aetna Ins. Co.*, 501 P.2d 706, 710-11 (Idaho 1972), *overruled on other grounds by Sloviaczek v. Estate of Puckett*, 565 P.2d 564 (Idaho 1977). If the insured can demonstrate substantial compliance with the notice provision and a valid excuse for failing to meet a strict compliance standard, then the burden shifts to the insurer who must demonstrate both that the notice provision is a condition precedent to coverage and that it suffered prejudice in order to be relieved of liability. *Id.* at 714. "Both the fact of the violation of the conditions of the policy, and that prejudice resulted therefrom, are matters of affirmative defense, which must be pleaded and proved by the insurer." *Leach*, 213 P.2d at 923.

In contrast, in situations in which there is a total failure to comply with a notice of suit provision, prejudice is essentially assumed. *See Viani*, 501 P.2d at 711. A complete breach of a notice of suit provision, such that an insurer is never made aware of the suit

until after a judgment has been entered against the insured, is generally a total defense to liability. *Id.* "A survey of the cases has not produced a single instance where a complete breach of a notice of suit requirement, which is a condition precedent, such that the insurer was never aware of the suit, did not constitute a total defense to liability under the policy." *Id.*

The reason for this rule is that a notice of suit provision, such as the Claims Reporting Provision, is essentially a reservation by the insurer of its "right to have a case investigated, prepared, and presented by counsel of its own choosing." *Id.* at 712. Further, "to be deprived of that right constitutes prejudice, however imponderable the damages, and however efficient and competent the attorneys retained by the insured." *Id.*

Under Idaho law, "substantial performance by the insured is all that is required to satisfy [the notice condition of the policy] and valid excuses from the insured will be considered in finding substantial compliance." *State of Idaho v. Bunker Hill Co.*, 647 F. Supp. 1064, 1075 (D. Idaho 1986). "Whether notice is prompt in accordance with the terms of the policy is a question of fact." *See Hoffman v. Oregon Mut. Ins. Co.*, No. cv 11-120-WBS, 2012 WL 1981484, at *6 (D. Idaho May 29, 2012).

Assuming the April 2012 contacts between Macy and Bosski constituted notice of a "Claim," thus triggering the Claims Reporting Provision, then the jury must decide whether Bosski substantially complied with the Claims Reporting Provision by orally notifying the Leavitt Group of the potential claim and providing actual notice to Evanston

**MEMORANDUM DECISION AND ORDER - 20**

on November 14, 2013. Making all reasonable inferences in Bosski's favor as required on summary judgment, the Court finds there is a genuine dispute of fact that precludes summary judgment on this issue.

Evanston argues that the 19-month delay constitutes late notice under the Claims Reporting Provision as a matter of law. While, on its face, a 19-month delay may seem unreasonable, a jury could conclude in this instance that it was not. Based on the facts in the record, a reasonable inference can be made that Bosski's conduct, though below the standard necessary to constitute strict compliance, was nevertheless reasonable and excusable under the circumstances. Moreover, there is no allegation that Evanston was prejudiced in any way by the delay in actual notice.

First, there is Idaho law to support the conclusion that notice to a local insurance agent clothed with apparent authority constitutes notice to the insurer. *County of Kootenai v. Western Cas. & Sur. Co.*, 750 P.2d 87, 92 (Idaho 1988). The Idaho Supreme Court has held that "an agent of a foreign insurance company, who is empowered to take applications, countersign and deliver policies, collect and remit premiums, and transmit claims, was clothed with the apparent authority to bind the insurer on a parol contract of insurance." *Id.* (citing *Hupper v. Wolford*, 420 P.2d 11 (Idaho 1966)).

Whether the agent has actual authority is not a relevant inquiry; the focus is on *apparent* authority. "Notice to the local agents of a foreign insurer is notice to the insurer and when third persons habitually deal with such agents they have the right to rely on the

**MEMORANDUM DECISION AND ORDER - 21**

apparent authority of such agents to receive notice on behalf of the insurer. *Id.* (emphasis added) (quoting 3 Couch on Insurance 2d § 26: 149 at 811 (2d ed. 1982)).

Evanston argues vehemently that Leavitt was not Evanston's agent. In support of this argument, Evanston describes the various players in the insurance industry, including insurance producers, surplus lines carriers, and retail versus wholesale insurance brokers.

Evanston's arguments miss the mark. Bosski is not arguing that Leavitt was, in fact, Evanston's agent. Bosski is arguing that Leavitt was Evanston's *apparent* agent. Moreover, there are facts in the record sufficient to support Bosski's reliance on Leavitt as Evanston's apparent agent. For example, The Leavitt Group handled Bosski's application, delivered the policy, collected premiums, and answered Bosski's day-to-day inquiries. Most importantly, when the November 11, 2013 demand letter was received, Bosski sent that letter to Leavitt stating "Please see the attached from our insured" (*Boguslawski Dec.* at Ex. 7 and Evanston does not dispute that it received actual notice of the claim at that time.

Second, there is Idaho law supporting the conclusion that oral notice may constitute substantial compliance with the policy's notice conditions. *See Leach*, 213 P.2d at 923. However, in this case, Evanston did not receive actual notice of the claim through Bosski's oral communications with the Leavitt Group. Instead, Evanston received actual notice of the claim on November 14, 2013 when Macy sent Bosski a demand letter. The Court cannot conclude on these facts that oral notification, alone, constitutes substantial compliance with the Claims Reporting Provision. Nonetheless, under these circumstances, a reasonable

**MEMORANDUM DECISION AND ORDER - 22**

juror could conclude that Bosski's oral notification provided to the Leavitt Group as Evanston's apparent agent provides justification for the delay in actual notice. *See State of Idaho v. Bunker Hill Co.*, 647 F. Supp. at 1075 ("valid excuses from the insured will be considered in finding substantial compliance"). Further, it is reasonable to conclude that the oral notice, combined with actual notice as of November 2013, constitutes substantial compliance with the Claims Reporting Provision.

Third, there is nothing in the record before the Court to suggest that the delay in actual notification until November 2013 caused Evanston any harm. Once a demand letter was received, Bosski promptly notified the Leavitt Group and Evanston received notice of the "Claim." This occurred months before a lawsuit was ever filed, and there is absolutely nothing in the record to indicate that Evanston was prejudiced in any way by the delay in actual notice.

In short, there are sufficient facts in the record to support a finding that Bosski substantially complied with the Claims Reporting Provision even assuming *arguendo* that the April 5 and 6, 2012 contacts with Macy constituted a Claim. Accordingly, summary judgment must be denied.

### D.  Summary Judgment is Not Warranted on Any Other Bosski Claims

Evanston's argument for summary judgment on Bosski's bad faith claim was premised upon the Court finding no coverage as a matter of law. Because the Court resolves that issue in Bosski's favor, Evanston's bad faith argument is moot.

**MEMORANDUM DECISION AND ORDER - 23**

In addition, while Evanston requested summary judgment on all of Bosski's claims, neither of the parties have addressed Bosski's estoppel claim. Accordingly, that claim also survives Evanston's motion.

**4.     Bosski Request for Certification to the Idaho Supreme Court.**

In opposition to Evanston's summary judgment motion, Bosski requests that the Court certify the following question of law to the Idaho Supreme Court:

> Given the competing holdings in *Leach*, 213 P.2d 920, *Viani*, 501 P.2d 707, and *Union Warehouse*, 917 P.2d 1300, what is the status of the law in Idaho where an insured delays in giving notice or fails to give notice at all to its insurer- are all claims by the insured invalidated regardless of whether prejudice results to the insurer?

(*Opposition Brief*, p. 20, Dkt. 26).

The Court denies the request for certification for three reasons. First, the Court finds no apparent conflict in the Idaho authority. Second, the question is far broader than necessary to resolve the issues before the Court. Third, certification will result in unreasonable and unnecessary delays to the resolution of this dispute.

## <u>CONCLUSION</u>

In conclusion, the Court finds that Evanston's recoupment claim fails as a matter of Idaho law. However, disputes of fact preclude summary judgment on all of Bosski's claims in the Counterclaim.

**MEMORANDUM DECISION AND ORDER - 24**

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED as follows:

1.     Defendants' Motion for Partial Judgment on the Pleadings (Dkt. 19) is

       **GRANTED**. Count Two of Evanston's Complaint is dismissed as a matter

       of law.

2.     Plaintiff's Motion for Summary Judgment (Dkt. 20) is **DENIED**.

DATED: March 28, 2017

Edward J. Lodge
United States District Judge